## PORTERFIELD et al. v. WEBB, Atty. Gen. of California, et al.

(District Court, S. D. California, S. D., at Los Angeles. December 19, 1921.)

No. F-61.

Aliens ⬥10—California Alien Land Law held constitutional and valid.

California Alien Land Law, § 2, adopted in November, 1920, providing that aliens not eligible to citizenship may not acquire, hold, or transfer real property or any interest therein except in the manner, to the extent, and for the purpose provided in a then-existing treaty between the United States and the country of which such alien is a citizen or subject, *held* constitutional and valid.

In Equity. Suit by W. L. Porterfield and Y. Mizuno against U. S. Webb, Attorney General of the state of California, and another. On motion for preliminary injunction. Denied.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Albert H. Elliot and Guy C. Calden, both of San Francisco, Cal., for plaintiffs.

U. S. Webb, Atty. Gen. of California, and Thomas Lee Woolwine, Dist. Atty., of Los Angeles, Cal., for defendants.

Before HUNT, Circuit Judge, and BLEDSOE and DOOLING, District Judges.

DOOLING, District Judge. The bill of complaint herein avers that the plaintiff Porterfield is a citizen of the United States, and the plaintiff Mizuno a subject of the emperor of Japan lawfully residing in the state of California. Porterfield is the owner of 80 acres of land particularly adapted to raising vegetables, which he desires to lease to Mizuno, and which Mizuno desires to rent from him for a period of five years; but they are prevented from entering into such lease because of the provisions of the act adopted at the election in November, 1920, known as the California "Alien Land Law" (St. 1921, p. lxxxiii), and the threat on the part of the defendants U. S. Webb, Attorney General, and Thomas Lee Woolwine, district attorney, to enforce said act in all of its terms against them if the desired lease is executed. This action is brought to restrain such enforcement. It is claimed that the act violates certain provisions of the Constitution of the United States, and is in conflict with treaty guaranties and with certain named sections of the Revised Statutes.

The act provides, in sections 1 and 2, as follows:

"Section 1. All aliens eligible to citizenship under the laws of the United States may acquire, possess, enjoy, transmit and inherit real property, or any interest therein, in this state, in the same manner and to the same extent as citizens of the United States except as otherwise provided by the laws of this state.

"Sec. 2. All aliens other than those mentioned in section one of this act may acquire, possess, enjoy and transfer real property, or any interest therein, in this state, in the manner and to the extent and for the purpose prescribed by any treaty now existing between the government of the United States and the nation or country of which such alien is a citizen or subject, and not otherwise."

Other sections provide penalties by escheat and imprisonment for its violation. It will readily be seen that the act itself violates no treaty provision, because section 2 thereof expressly protects aliens not eligible to citizenship in their relation to real property to the extent and for the purpose prescribed by any treaty between the United States and their own country, so that whatever is guaranteed by such treaty is excluded from the operation of the act. The leasehold interest intended to be conveyed by Porterfield to Mizuno is an interest in agricultural land, and there is nothing in the treaty with Japan that secures to Japanese subjects resident in this country the right to acquire, possess, or enjoy agricultural land, or any interest therein.

The constitutional, statutory, and treaty provisions involved in this action were considered at length by Circuit Judge Gilbert and District Judges Cushman and Neterer in the recent case of Terrace et al. v. Thompson (D. C.) 274 Fed. 841, upon an application for a temporary injunction to restrain the Attorney General of the state of Washington

from enforcing a statute of that state of the same general character as the law of California now under consideration. The plaintiffs in that case advanced, urged, and argued practically the same contentions that are made by plaintiffs here, all of which were rejected by the court. As we fully agree with the reasoning and conclusions in the Terrace Case, it is unnecessary for us to restate them, or to go over them in detail.

It is urged, however, that this case differs from the Terrace Case, in that the Washington law excludes from ownership of land all aliens except those who have in good faith declared their intention to become citizens, while the California law excludes only such aliens as are ineligible to citizenship, and that the designation of this limited class is arbitrary, unreasonable, unwarranted, and therefore invalid; or, as stated by counsel, the Legislature cannot take what might be termed a natural class of persons (i. e., aliens), split that class in two, and then arbitrarily designate the dissevered fragments of the original unit as two classes, and thereupon enact different rules for the government of each. As a matter of fact, however, the Washington law does split up the natural class of persons (aliens) into aliens who have, and aliens who have not, in good faith declared their intention to become citizens of the United States, and enacted different rules for the government of each, in that the former may, and the latter may not, own land.

It is true that Congress has the power arbitrarily to say who may be naturalized, and that, exercising such power, it has limited the right of naturalization to "aliens being free white persons, and to aliens of African nativity, and to persons of African descent." This limitation excludes three of the five great races of the world, the yellow, the brown, and the red. And while such exclusion is in a sense arbitrary, it is not without foundation in reason, and has been in effect, except for a brief period, practically during the existence of our government. In any event, once established, however arbitrarily, and so long as it continues, it furnishes a fundamental and important distinction, which may well be adopted by a state in determining who may not own land within its borders. That fact was clearly recognized by the court and given expression in the Terrace Case in the following language:

"It is obvious that one who is not a citizen and cannot become one lacks an interest in, and the power to effectually work for the welfare of, the state, and, so lacking, the state may rightfully deny him the right to own and lease real estate within its boundaries. If one incapable of citizenship may lease or own real estate, it is within the realm of possibility that every foot of land within the state might pass to the ownership or possession of noncitizens. Such a result would leave the foundation of the state but a pale shadow, and the structure erected thereon but a tower of Babel, from which the tenants in possession might, when the shock of war came, bow themselves out, because they were not bound as citizens to defend the house in which they lodged."

If there be anything in the case of Ah Chong (C. C.) 2 Fed. 733, which may be held to prohibit a state from lawfully preventing persons ineligible to citizenship from owning land therein, to that extent we are not disposed to follow it.

The application for a preliminary injunction is denied.